**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

BENJAMIN DAVID ROMERO TRADO
5818 Eastern Avenue, N.E.
Washington D.C. 20011

    *Plaintiff*,

     v.

EXPRESS HOME SOLUTIONS L.L.C.
1604 Terrapin Hills Drive
Bowie, Maryland 20721

SERVE: JOSEPH ESTEP
       339 35th Street, N.E.
       Washington, D.C. 20019

DEFINED CONTRUCTION GROUP, L.L.C.
1522 Point Ridge Place, Suite 1
Bowie, Maryland 20716-1887

SERVE: SANOVIA SMITH
       538 13th Street, S.E.
       Washington, D.C. 20003

SANOVIA SMITH
538 13th Street, S.E.
Washington, D.C. 20003

STEVEN FENWICK
538 13th Street, S.E.
Washington, D.C. 20003

JOSEPH ESTEP
339 35th Street, N.E.
Washington, D.C. 20019

    *Defendants*.

Civil Action No.: 21-3152

**AMENDED COMPLAINT**

Plaintiff, Benjamin David Romero Tirado ("Plaintiff") brings this action against

Defendants, Express Home Solutions, LLC ("EHS"), Defined Construction Group, LLC ("DCG"),

Joseph Estep ("J. Estep"), Steven Fenwick ("S. Fenwick") and Sanovia Smith ("Smith") (collectively the "Defendants"), for violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427; the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2; the District of Columbia Minimum Wage Revision Act, D.C. §§ 32-1001, *et. seq.* ("DCMWRA"); and the District of Columbia Wage Payment and Collection Act, D.C. Code, §§ 32-1301, *et seq.* ("DCWPCA").

In support, Plaintiff alleges as follows:

## THE PARTIES

1.      Plaintiff is an adult resident of the District of Columbia and was employed by Defendants from approximately April 2020 to late May 2021, when he resigned. At all times relevant to the Complaint, Plaintiff performed carpentry work on homes that were being remodeled by Defendants so that the homes could then be sold by Defendants for profit. Plaintiff performed this work primarily in the District of Columbia and Maryland. During the time he was employed by Defendants, he was paid a daily rate of $200 but was not paid an overtime premium for overtime hours. Plaintiff was also not paid anything at all for several weeks of work. Defendants generally paid Plaintiff separately for each week of work, but had no established regular pay day, and Defendants often paid Plaintiff weeks or months after the weekly payments were due.

2.      EHS is a limited liability company organized under the laws of the District of Columbia. EHS is Plaintiff's "employer" as that term is defined within the FLSA, the MWHL, the MWPCL, the DCMWRA and the DCWPCA, because, through its agents, owners, officers and/or members, it employed the Plaintiff, hired him, set his rate of pay, set the terms and conditions of

his employment, set his schedule, directed him in the performance of his work, assigned him work, maintained employment records for Plaintiff and paid his wages.

3.      DCG is a limited liability company organized under the laws of the District of Columbia. DCG is Plaintiff's "employer" as that term is defined in the FLSA, the MWHL, the MWPCL, the DCMWRA and the DCWPCA, because, through its agents, owners, officers and/or members, it employed the Plaintiff directly, hired him, set his rate of pay, set the terms and conditions of his employment, set his schedule, directed him in the performance of his work, assigned him work, maintained his employment records and paid his wages.

4.      EHS and DCG are joint employers of Plaintiff because they have unified ownership and operations. *See also Salinas v. Commercial Interiors, Inc.*, 848 F. 3d 125, 134 (4th Cir. 2017); *Perez v. C.R. Calderon Construction, Inc.*, 221 F. Supp. 3d 115, 157 (D.D.C. 2016).

5.      More specifically, (1) EHS and DCG jointly determine, share, or allocate the power to direct, control, or supervise Plaintiff by direct or indirect means; (2) formally and as a matter of practice, the EHS and DCG jointly determined, shared, or allocated the power to—directly or indirectly—hire or fire Plaintiff or modify the terms or conditions of his employment; (3) the working relationship between EHS and DCG was permanent; (4) through shared management or a direct or indirect ownership interest, EHS and DCG are controlled by, or are under common control of the other; (5) the work is performed on a premises owned or controlled by both EHS and DCG, independently or in connection with one another; and (6) formally or as a matter of practice, EHS and DCG jointly determined, shared, or allocated responsibility over functions ordinarily carried out by an employer, such as handling payroll; paying wages; or providing the facilities, equipment, tools, or materials necessary to complete the work.

6.      EHS and DCG each (and together) constitute an "Enterprise Engaged in Commerce"

within the meaning of 29 U.S.C. § 203 (s)(1), as DCG had: (1) employees engaged in commerce or

the production of goods for commerce, or employees handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce; and (2) a gross volume of

sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail

level that are separately stated).

7.      Smith is an owner, officer, and/or member of DCG and EHS. She is an employer of

Plaintiff within the meaning of the FLSA, the MWHL, the MWPCL, the DCMWRA and the

DCWPCA because she is an owner, officer, and/or member of DCG and EHS, who is significantly

involved in DCG's and EHS's business operations. Specifically, (1) she is responsible for creating

and enforcing DCG's and EHS's policies and procedures governing employee pay; (2) she controls

the corporate funds of both DCG and EHS which were used to pay Plaintiff and other employees

and she could and did allocate funds as profits for her own benefit; (3) she set and approved the

daily rate for Plaintiff and other employees who are non-exempt and acted with knowledge of or

approved the unlawful pay practices of failing to pay an overtime premium for overtime hours; (4)

she had authority to hire, fire and discipline Plaintiff from his employment with DCG and EHS; (5)

individually and through her agents, she supervised Plaintiff, established his work schedule and

directed him to the various job sites where he worked; (7) she personally inspected the job sites

before and after Plaintiff completed his work, and she gave Plaintiff instructions on the performance

of his work and made corrections to it; (8) she paid the Plaintiff out of corporate funds of DCG and

EHS; (9) she made the decision not to pay Plaintiff for some of the wages due but not all and in

many instances she provided Plaintiff with wage checks that were drawn on insufficient funds; (10)

in fact, Plaintiff complained to her about the bounced checks and not being paid anything at all for

some work weeks and she assured Plaintiff that he would be paid, but she failed to pay Plaintiff for several weeks of work and made the decision not to pay him at all or not to pay him timely in violation of the wage laws; (11) she made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make DCG and EHS more profitable; (11) she decided when and how much Plaintiff would be paid and she issued and signed his pay checks from both EHS and DCG; and (12) she maintained Plaintiff's employment records.

8.      J. Estep is an owner, officer, and/or member of EHS and on information and belief, is jointly employed by EHS and DCG. J. Estep has previously identified himself as S. Fenwick's brother and upon information and belief is Smith's husband. He is an employer of Plaintiff within the meaning of the FLSA, the MWHL, the MWPCL, the DCMWRA and the DCWPCA because he is an owner, officer, and/or member of EHS, who is significantly involved in DCG's business operations. Specifically, (1) he purchased the materials that Plaintiff utilized in his carpentry work; (2) he is responsible for creating and enforcing EHS's policies and procedures governing employee pay and benefits; (3) he controls the corporate funds which were used to pay Plaintiff and other employees and he could and did allocate funds as profits for his own benefit; (4) he set and approved the daily rate for Plaintiff and other employees who are non-exempt and acted with knowledge of or approved the unlawful pay practices of failing to pay an overtime premium for overtime hours, failing to pay wages timely and failing to pay any wages for some work weeks; (5) he had authority to hire, fire and discipline Plaintiff; (6) he supervised Plaintiff on a daily basis and directed him in the performance of his work, established his work schedule and directed him to the various job sites where he worked; (7) he made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make EHS more profitable; (8) he and Smith made the

5

decision not to pay Plaintiff for several weeks of work in violation of the wage laws; and (9) he

maintained Plaintiff's employment records.

9.      S. Fenwick is jointly employed by DGS and EHS and holds an ownership interest

in both companies. He has previously identified himself as J. Estep's brother and Smith's husband.

He is an employer of Plaintiff within the meaning of the FLSA, the MWHL, the MWPCL, the

DCMWRA and the DCWPCA because he significantly involved in the business operations of EHS

and DGS. Specifically, (1) he is responsible for creating and enforcing policies and procedures

governing employee pay and benefits; (2) he controls the corporate funds of DGS which were used

to pay Plaintiff and other employees and he could and did allocate funds as profits for his own

benefit; (3) he set and approved the daily rate for Plaintiff and other employees who are non-exempt

and acted with knowledge of or approved the unlawful pay practices of failing to pay an overtime

premium for overtime hours; (4) he had authority to hire, fire and discipline Plaintiff; (5) he

supervised Plaintiff on a daily basis and directed him in the performance of his work, established

his work schedule and directed him to the various job sites where he worked; (6) he made or

approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in

order to make DCG more profitable; (7) Plaintiff complained to him about bounced checks, being

paid late, not being paid anything at all for some work weeks and S. Fenwick assured Plaintiff that

he would be paid, but failed to pay Plaintiff his full pay for many work weeks; (8) S. Fenwick,

along with Smith, made the decision not to pay Plaintiff for some work weeks and to pay Plaintiff

late; and (9) he maintained Plaintiff's employment records.

## JURISDICTION

10.    The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217.
The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal
questions and the Court has pendant jurisdiction over the Plaintiff's state law claim under 28 U.S.C.
§ 1367.

11.    This Court has *in personam* jurisdiction over Defendants because they all frequently
conduct business in the District of Columbia, the corporate entities are licensed to do business in
the District of Columbia and regularly conduct business in the District of Columbia, all Defendants
own property in the District of Columbia, and many of the events giving rise to the claims in this
case occurred in the District of Columbia.

## STATEMENT OF FACTS

12.    While employed by Defendants, Plaintiff's duties included carpentry work on homes
that Defendants were remodeling as investments for resale.

13.    On many of the projects Plaintiff was assigned to work on, one or more of the
Defendants served as the general contractor or intermediate level subcontractor. For example, DCG
sometimes served as the general contractor on a project and hired S. Fenwick as a subcontractor for
that project.

14.    Plaintiff worked five days per week normally, but once or twice per month (and
sometimes more) he would work six days per week. He typically worked 8 hours per day. Generally,
when he worked on the weekend, he would work 48 hours per week and when he did not work on
the weekends, his work week would be approximately 40 hours.

15.    Plaintiff worked almost exclusively on projects in the District of Columbia and
Maryland.

16.     While employed by Defendants, Plaintiff performed work on remodeling projects located in the District of Columbia. During the time Plaintiff performed work within the District of Columbia, he was employed within the District of Columbia within the meaning of D.C. Code § 32-1003 (b), because, during these time frames, he regularly spent more than 50% of his work time in the District of Columbia. Plaintiff does not have the precise list of District of Columbia projects at this time because Defendants possess this information. Plaintiff will need to engage in discovery to ascertain this information.

17.     Defendants unlawfully paid Plaintiff a daily rate of $200 for all of his hours of work, even his overtime hours. But they failed to pay Plaintiff an overtime premium for his overtime hours. Plaintiff would receive checks for his wages from both EHS and DCG and all of the checks were signed by Smith.

18.     For work performed in Maryland, Defendants were required to create and maintain for at least three years, the following records: (1) the amount that is paid each pay period to each employee; (2) the hours that each employee worked each day and each workweek. Md. Code Ann., Labor & Employment § 3-424. For Maryland work, Defendants were also required to establish regular paydays, provide Plaintiff with written notice of his regular payday and pay Plaintiff a minimum of once every two weeks. *Id*. §§ 502, 504.

19.     For work performed in the District of Columbia, Defendants were required to pay all earned wages to Plaintiff "on regular paydays designated in advance by the employer and at least twice during each calendar month." D.C. Code § 32-1302.  In addition, the law prohibits providing employees with checks drawn on insufficient funds: "Wages shall be paid on designated paydays in lawful money of the United States, or checks on banks payable upon demand by the bank upon which drawn." *Id*.

8

20.     For work performed in the District of Columbia, beginning on January 1, 2020, Defendants were required to use a third-party payroll service to prepare payroll for them. D.C. Code § 32-1008 (a-1). And, since February 27, 2015, Defendants were required to provide Plaintiff with an itemized written statement providing: (1) the date of the wage payment; (2) gross wages paid; (3) deductions from and additional to wages, including a separate line for gratuities paid; (4) hours worked during the pay period. *Id*. § 32-1008 (b).

21.     In addition, for work performed in the District of Columbia, Defendants were required to provide a written notice to Plaintiff concerning, *inter alia*, the following: (1) his rate of pay and the basis of that rate, including: by the hour, shift, day, week, salary, piece, commission, overtime rate of pay, exemptions from overtime pay; and (2) Plaintiff's regular payday designated by the employer in accordance with § 32-1302.

22.     Defendants did not utilize a third-party payroll service and failed to provide the Plaintiff with any written notice regarding his overtime rate of pay, any exemption from the overtime requirements that applied to him, or his regular payday. Defendants also failed to provide Plaintiff with a written statement regarding the following: (1) deductions from and additional to wages, including a separate line for gratuities paid; or (2) hours worked during the pay period.

23.     Many of the checks that Plaintiff received from Defendants were returned for insufficient funds. And Defendants had no regular schedule for paying the Plaintiff and sometimes paid Plaintiff weeks or months after he performed the work in question and sometimes, they failed to pay him anything at all for the work he completed.

24.     In addition, under District of Columbia law, Defendants were required to have paid Plaintiff all wages due within 7 days after he resigned (February 2, 2021). D.C. Code § 32-1303. Under Maryland law, Defendants were required to have paid Plaintiff each increment of his weekly

wages within two weeks of his regular weekly pay day. If Defendants failed to do so, they are liable for double liquidated damages in addition to the back pay owed. Md. Code Ann., Labor & Employment §§ 3-507.2 (a).

### COUNT I
### VIOLATIONS OF THE FLSA
### 29 U.S.C. §§ 201 – 216 (b)

25.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

26.     At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of the FLSA.

27.     At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the FLSA.

28.     Defendants violated the overtime provisions of the FLSA by knowingly failing to pay Plaintiff one and one-half times his regular hourly rate for each hour over 40 that he worked and failing to pay Plaintiff anything at all for many of his work hours.

29.     In some work weeks, when Defendants failed to pay Plaintiff anything at all, they violated the minimum wage provisions of the FLSA, which require a minimum of $7.25 per hour.

30.     Defendants' actions were not undertaken in good faith or with a reasonable belief that they were lawful and they were willful such that the statute of limitations is three years.

31.     Plaintiff is not able to calculate his damages at this time because he is not in possession of all of his time or payroll records.

32.     Defendants are liable to Plaintiff under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time and overtime time wages, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

33.     For this Count, Plaintiff is seeking wages and damages back to the beginning of his employment.

## COUNT II
## VIOLATIONS OF THE MWHL

34.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

35.     At all times relevant to this Complaint, Defendants were "employers" of Plaintiff within the meaning of the MWHL.

36.     At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the MWHL.

37.     Defendants violated the MWHL by failing to pay Plaintiff one and one-half times his regular hourly rate for each hour over 40 that he worked and failing to pay Plaintiff anything at all for many of his work hours.

38.     Defendants also violated the MWHL by failing to pay Plaintiff the Maryland minimum wage during the work weeks when Defendants paid Plaintiff nothing at all. From January 1, 2020 until December 31, 2020, the Maryland minimum wage was $11.00 per hour. From January 1, 2021 to the end of Plaintiff's employment with Defendants, the Maryland minimum wage was $11.75 per hour.

39.     Defendants did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiff to liquidated damages.

40.     Plaintiff is not able to calculate his damages because he is not in possession of his time or payroll records.

11

41.     As a result, Defendants are liable to Plaintiff pursuant to the MWHL for their unpaid and illegally withheld straight time and overtime wages for the statutory period, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

42.     For this Count, Plaintiff is seeking wages and damages back to the beginning of his employment with Defendants.

## COUNT III
## VIOLATIONS OF THE MWPCL

43.     Plaintiff repeats and incorporates by reference all allegations set forth above.

44.     Defendants knowingly, willfully and intentionally violated Plaintiff's rights, under the MWPCL by failing to pay Plaintiff all of his overtime and minimum wages under the MWHL failing to pay him anything at all for many of his work hours, by failing to adhere to a regular payday for Plaintiff and paying his wages late, in some cases, weeks or months after the wages were earned and required to be paid.

45.     Defendants' unlawful failure or refusal to pay the required wages or the late payments were not the result of a *bona fide* dispute within the meaning of the MWPCL.

46.     Plaintiff is not able to calculate his damages at this time because he is not in possession of his time records or the vast majority of his payroll records.

47.     Defendants are liable to Plaintiff pursuant to the MWPCL for the aforementioned wages, an additional amount equal to double the unpaid overtime, straight-time wages and minimum wages as liquidated damages, litigation costs, attorneys' fees, and any other relief deemed appropriate by the Court.

48.     For this Count, Plaintiff is seeking wages and damages back to the beginning of his employment with Defendants.

## COUNT IV
## VIOLATIONS OF THE DCMWRA

49.     Plaintiff re-alleges and incorporates herein the allegations contained in the paragraphs above.

50.     At all times when he performed work in the District of Columbia, Plaintiff was an "employee" of Defendants within the meaning of D.C. Code § 32-1002 (2).

51.     At all times when he performed work in the District of Columbia, Defendants were "employers" of Plaintiff within the meaning of D.C. Code § 32-1002 (3).

52.     At all times when he performed work in the District of Columbia, Defendants violated the DCMWRA by failing to pay Plaintiff an overtime premium for the overtime hours he worked and failing to pay him anything at all for some hours of work. Defendants also violated the DCMWRA by failing to pay Plaintiff minimum wages during the work weeks when Defendants paid Plaintiff nothing at all.

53.     As a result of the violations of the DCMWRA by Defendants, they are liable for Plaintiff's unpaid wages, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

54.     The precise amount owed to Plaintiff for his work time in the District of Columbia cannot be calculated because Plaintiff and his counsel do not possess any time or payroll records

13

and do not possess the records of the dates and times when Plaintiff was performing work in the

District of Columbia. All of these records are in the exclusive possession of the Defendants.

55.     For this Count, Plaintiff is seeking wages and damages going back to the beginning

of his employment with Defendants.

## COUNT V
## VIOLATIONS OF THE DCWPCA

56.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs

above.

57.     At all times relevant to the Complaint, Plaintiff was an "employee" of Defendants

within the meaning of D.C. Code § 32-1301 (2).

58.     At all times relevant to the Complaint, Defendants were "employers" of Plaintiff

within the meaning of D.C. Code § 32-1301 (1B).

59.     Defendants violated the DCWPCA by failing to pay Plaintiff anything at all for

many of his work weeks (including straight-time hours and overtime hours) and by failing to pay

Plaintiff all of his wages within seven days after he resigned.

60.     The time frame for which damages are sought under this Count, are those work

weeks when Plaintiff spent some of his time on projects which were physically located in the

District of Columbia.

61.     As a result of the violations of the DCWPCA by Defendants, they are liable for

Plaintiff's unpaid wages, liquidated damages equal to three times the unpaid overtime and straight-

time wages and reasonable attorneys' fees and costs incurred in this action, including attorneys'

fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in

*Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code §
32-1308 (b)(1).

62.     The precise amount owed to the Plaintiff by Defendants cannot be calculated at this
time because Plaintiff and his counsel do not possess time or payroll records, which are in
possession of Defendants.

COUNT VI

**VICARIOUS LIABILITY FOR VIOLATIONS OF THE DCMWRA AND THE DCPCWL**

63.     Plaintiff re-alleges and incorporates herein the allegations contained in the
paragraphs above.

64.     At all times relevant to this Complaint, one or more of the Defendants served as
either a general contractor or intermediate level subcontractor on some of the jobs that Plaintiff
worked on. Therefore, in addition to being liable as Plaintiff's employers, one or more Defendants
may also be vicariously liable, jointly and severally, for the violations of the DCMWRA and
DCPCWL committed by any other Defendants. *See* D.C. Code §§ 32-1012 (c) and 32-1303 (5).

67.     As a result of the wage violations of the Defendants for which any other Defendants
are vicariously liable as general contractors or intermediate level subcontractors, Plaintiff is entitled
to his unpaid wages, liquidated damages equal to three times the amount of the unpaid wages and
attorney's fees and cost, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal
Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d
58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

68.     The precise amount owed to the Plaintiff cannot be calculated at this time because
Plaintiff does not possess all of his payroll records and/or time records which are in possession of
the Defendants.

15

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant him the following relief:

a)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff in the amount of Plaintiff's unpaid and illegally withheld overtime and straight-time wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on Defendants' violations of the MWHL in the amount of Plaintiff's unpaid and illegally withheld overtime and straight-time wages and an equivalent sum as liquidated damages;

c)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on Defendants' violations of the MWPCL in the amount of Plaintiff's unpaid and illegally withheld overtime and straight time wages and an amount equal to twice that sum as liquidated damages;

d)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on their violations of the DCMWRA in the amount of Plaintiff's unpaid and illegally withheld overtime and straight-time wages, plus an amount equal to three times the unpaid wages as liquidated damages, for violations occurring during Plaintiff's employment with Defendants;

e)      enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on their violations of the DCWPCA in the amount of Plaintiff's unpaid and illegally withheld overtime and straight-time wages, plus an amount equal to three times the unpaid wages as liquidated damages, for violations occurring during Plaintiff's

16

employment with Defendants;

   f)  enter a judgment against Defendants, jointly and severally, to the extent they are vicariously liable for violations of the DCMWRA and DCWPCA as general contractors or intermediate-level subcontractors, in an amount of Plaintiff's unpaid and illegally withheld overtime and straight-time wages, plus an amount equal to three times the unpaid wages as liquidated damages;

   g)  enter judgment in favor of Plaintiff for his costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b), Md. Code Ann., Labor & Empl. §§ 3-427 (a) and the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) and litigation costs and expenses, as required by D.C. Code § 32-1308 (b)(1).

        Respectfully submitted,

        /s/Omar Vincent Melehy
        Omar Vincent Melehy,
        DC Bar No.: 415849
        MELEHY & ASSOCIATES LLC
        8403 Colesville Road, Suite 610
        Silver Spring, MD 20910
        Tel: (301) 587-6364
        Fax: (301) 587-6308
        Email: ovmelehy@melehylaw.com
        *Attorneys for Plaintiff*