## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BENJAMIN DAVID ROMERO TIRADO,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**EXPRESS HOME SOLUTIONS L.L.C.,** *et al.*,<br><br>    **Defendants.** | **Civil Action No. 21-3152 (JEB)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff Benjamin Tirado is a carpenter who performed work for home-remodeling companies.  Claiming that the companies and their owners never paid him for some of that work, particularly overtime, he sued them under the federal Fair Labor Standards Act and assorted state wage statutes.  As two Defendants, Express Home Solutions and Joseph Estep, never responded to the Complaint, the Clerk of the Court has entered default against them.  Plaintiff now moves for a default judgment, which the Court will grant in the amount of $20,800.

### I.    Background

According to his Complaint, Plaintiff is seeking damages for unpaid wages under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Revision Act (DCMWRA), D.C. Code § 32-1001 *et seq.*; the District of Columbia Wage Payment and Collection Law (DCWPCL), D.C. Code § 32-1301 *et seq.*; the Maryland Wage and Hour Law (MWHL), Labor & Empl. Art. §§ 3-415 and 3-427; and the

1

Maryland Wage Payment and Collection Law (MWPCL), Labor & Empl. Art., §§ 3-505 and 3-507.2.  See ECF No. 29 (Amended Compl.), ¶ 2.

Defendants here are Express Home Solutions, LLC (EHS), Defined Construction Group, LLC (DCG), Joseph Estep, and Sanovia Smith.  After filing this action on December 1, 2021, Tirado effected timely service on Smith on February 5, 2022, see ECF No. 4; Estep and EHS were served on February 16, 2022, see ECF Nos. 6–7 (Affidavits of Process Server); and DCG was served on April 25, 2022.  See ECF No. 16 (Affidavit of Process Server).  As no Defendant answered or otherwise responded, the Clerk of the Court, per Federal Rule of Civil Procedure 55(a), entered default on March 11, 2022.  See ECF Nos. 11–13, 19 (Clerk's Entries of Default).

On June 2, 2022, Smith and DCG successfully moved to vacate the default against them.  See ECF No. 24 (Motion to Vacate); Minute Order of June 6, 2022.  On June 13, hoping for the same result, Estep moved pro se to vacate the default against both himself and EHS, which the Court denied without prejudice both because no entity may appear pro se and because the motion lacked an accompanying statement of compliance with Local Civil Rule 7(m).  See ECF No. 26 (Motion to Vacate DJ); Minute Order of June 14, 2022.  Nothing further was filed.

Tirado now asks the Court to enter default judgment for $24,824 against EHS and Estep in unpaid overtime wages and liquidated damages.  See ECF No. 20 (Pl. Motion for DJ) at 11–12.

## II.    Legal Standard

Obtaining a "[d]efault judgment is a two-step procedure."  Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 102 (D.D.C. 2015) (citing Lanny J. Davis & Assocs., LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013)).  "First, the plaintiff

[must] request that the Clerk of the Court enter default against a party who has 'failed to plead or otherwise defend'" the action. Id. at 102–03 (quoting Fed. R. Civ. P. 55(a)). An entry of "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Id. at 103. Second, the plaintiff must then move the Court for a default judgment. See Fed. R. Civ. P. 55(b).

The determination of whether a default judgment is appropriate is "committed to the sound discretion of the trial court." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) (citations omitted). A default judgment may be entered where a defendant is "totally unresponsive" and her default is plainly willful, as reflected by her failure to respond to the summons and complaint, the entry of default, or the motion for default judgment. Hanley-Wood LLC v. Hanley Wood LLC, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez, 2000 WL 331721, at *2 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)).

To ensure that there is an adequate basis to determine damages, "a plaintiff must prove [his] entitlement to the relief requested using 'detailed affidavits or documentary evidence' on which the court may rely." Ventura, 134 F. Supp. 3d at 103 (quoting Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014)).

### III.   Analysis

This Opinion looks first at whether Defendants' unresponsiveness warrants a default judgment, then at whether the claims brought under the FLSA and DCWPCL are sufficiently established against these Defendants and, if so, what the proper amount of damages is.  Although Plaintiff initially invoked the MWHL and MWPCL, he does not seek relief under those statutes or provide further evidence or legal analysis of work performed in Maryland.  As such, Maryland law will not be considered here.  Further, although Plaintiff seeks relief under the DCMWRA, that statute is not necessary for this analysis.

####   A.   Default Judgment

The Court concludes that Defendants' default here is willful and deliberate inasmuch as they failed to defend this action after one halfhearted attempt to vacate the default.  "Given 'the absence of any request to set aside the default or . . . the defendant['s proving] that [he] has a meritorious defense,' it is clear that the standard for default judgment has been satisfied."  Hanley-Wood, 783 F. Supp. 2d at 150 (quoting Gutierrez, 2000 WL 331721, at *1).

####   B.   Proper Defendants

Next, the Court finds that Defendants are employers under the FLSA.  An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency."  29 U.S.C. § 203(d).  In applying this definition, courts ask whether the alleged employer had "the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records."  Diaz v. Coddi-Wes I, LLC, No. 19-3531, 2022 WL 971309, at *4 (D.D.C. Mar. 31, 2022) (citing Villar v. Flynn Architectural Finishes, Inc., 664 F. Supp. 2d 94, 96 (D.D.C. 2009)).  Estep, as owner of EHS, controlled Plaintiff's work schedule and had the

Case 1:21-cv-03152-JEB   Document 35   Filed 07/29/22   Page 5 of 8

authority to hire, fire, and discipline him.  See ECF No. 20-2 (Tirado Declaration), ¶¶ 4, 6, 10,

20.  Estep also updated Tirado about job locations, provided instructions on the tasks that needed

to be completed, set his work schedule, and determined his pay and benefits.  Id., ¶¶ 6, 8–10, 15–

18.  Further, "'because the DCWPCL and FLSA contain nearly identical provisions with respect

to employers' liability,' the determination of whether an individual is an employer or an

employee for the purpose of the FLSA also applies for the purpose of D.C. law."  Diaz, 2022 WL

971309, at *1 (citing Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 5 n.2 (D.D.C. 2010)).

     Defendants are also jointly and severally liable.  "[A] corporate officer with operational

control of a corporation's covered enterprise is an employer along with the corporation, jointly

and severally liable under the FLSA."  Murcia v. A Cap. Elec. Contractors, Inc., 270 F. Supp. 3d

39, 45 (D.D.C. 2017) (quoting Ventura, 134 F. Supp. 3d at 102 n.1).  Estep and EHS, as

Plaintiff's employer, are thus jointly and severally liable for any award here.

     C.   Wages

     The Court's duty is to ensure that there is an adequate basis to determine damages, and a

plaintiff must "prove [his] entitlement to the relief requested using detailed affidavits or

documentary evidence on which the court may rely."  Ventura, 134 F. Supp. 3d at 103 (internal

quotations marks and citation omitted).  Plaintiff asserts that he is owed $6,200 in total unpaid

wages and sets out three categories for which he seeks relief.  First, there are instances when he

was underpaid for working overtime.  See Pl. Motion for DJ at 3–4.  Second, Defendants at times

never made any payment for hours worked.  Id. at 4–5.  Third, they occasionally issued a check

with the appropriate amount of wages, but the checks were rejected by the bank for insufficient

funds.  Id. at 4.  Tirado in this case has met his burden by providing a detailed declaration, as

well as copies of checks and documentation of checks being returned.  See Tirado Decl.; ECF

Nos. 20-3 (Unpaid Overtime Checks); 20-4 (Returned Checks).  The Court will now evaluate each category of damages in turn.

        *1.*     *Unpaid Overtime*

The Court agrees that Plaintiff is entitled to $1,800 in unpaid overtime wages.  The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1); see also D.C. Code § 32-1003(c).  Tirado asserts that there were 18 weeks in which he worked 48 hours per week and was paid only at his regular rate.  See Tirado Decl., ¶ 22.  Plaintiff explains that he was entitled to an overtime premium of $12.50, based on his hourly rate of $25.  Id.  The Court concurs with his methodology in calculating the damages accrued by underpayment of his overtime hours: 18 weeks x $12.50 x 8 hours/week = $1,800.

        *2.*     *Unpaid Wages*

Next, the Court finds that Plaintiff is owed damages for hours for which he was never paid.  "[T]o the extent that plaintiff[] ha[s] sufficiently proven late and outstanding payments, whether in the form of unpaid tips, wages, or salary, the Court may award those payments under the DCWPCL"  Bebo Foods, 738 F. Supp. 2d at 20; see also Herrera v. Mitch O'Hara LLC, 257 F. Supp. 3d 37, 45–46 (D.D.C. 2017) (awarding plaintiffs their full hourly rate for unpaid regular hours).

The Court, however, disagrees with Plaintiff's assertion that he is entitled to $2,400, which represents 96 hours (12 8-hour days) for which he claims he was not paid at all.  From September 7 to September 11, 2020, Tirado explains that he worked for 40 hours and should

have been paid $1,000 for that week of work.  See Tirado Decl., ¶¶ 27(a), 31.  That is all fine.

Plaintiff also asserts that there were seven days in October for which Defendants failed to

pay.  Id., ¶ 27(b).  Yet, he explains that five of those days were from October 12–16, and then he

states that "the following week, October 12–16, Plaintiff only worked 2 days (October 12 and 13,

16 hours total), but was not paid anything for this time."  Id.  This is classic double-counting.  As

this court found in Barahona v. Rosales, No. 15-1381, 2016 WL 11585360 (D.D.C. July 27,

2016), the plaintiff bears the burden of proving "[his] entitlement to the relief requested using

'detailed affidavits or documentary evidence' on which the court may rely."  Id. at *3 (quoting

Ventura, 134 F. Supp. 3d at 103).  Since it is unclear which days in October Plaintiff is

complaining about, the Court will include only two days in its calculation of damages.  The total

number of unpaid hours is thus reduced from 96 to 56.  The Court multiplies Plaintiff's hourly

rate of $25 by the 56 total hours and finds that he is instead entitled to relief of $1,400 for this

category.

### 3.   Bounced Checks

The Court also concludes that Tirado is owed $2,000 for work he performed and never

received payment for because the checks bounced.  "Where the Court can award the unpaid

wages represented in paychecks that could not be cashed, the Court will award plaintiffs the

hourly rate defendants paid them for each hour they estimated working during the respective pay

period."  Bebo Foods, 738 F. Supp. 2d at 21.  Plaintiff provides evidence of two checks — each

for $1,000 — written on October 10, 2020, and January 16, 2021, that were subsequently

rejected by his bank for insufficient funds.  See Returned Checks.  The $1,000 checks represent a

40-hour work week at his hourly rate of $25.  He is thus entitled to this award.

*     *     *

In sum, the Court finds that Plaintiff should recover $5,200 in unpaid wages.

D.   Liquidated Damages

In addition to this sum, Tirado seeks a multiplier for liquidated damages.  "[B]ecause D.C. law is more generous to employees on the point of liquidated damages, the Court will first assess damages under D.C. law and will not award a duplicative amount pursuant to federal law."  Herrera, 257 F. Supp. 3d at 44 (citing Williams v. WMATA, 472 F.2d 1258, 1261 (D.C. Cir. 1972)).  The DCWPCL provides that a delinquent employer may be liable to an employee for "(i) [t]he payment of any back wages unlawfully withheld; (ii) [l]iquidated damages equal to treble the amount of unpaid wages; (iii) [s]tatutory penalties; and (iv) [s]uch legal or equitable relief as may be appropriate, including reinstatement of employment, and other injunctive relief."  D.C. Code § 32-1308(a)(1)(A) (emphasis added).  "This is strong evidence that courts should multiply actual damages by four."  Barahona, 2016 WL 11585399, at *1.  The Court thus quadruples Plaintiff's actual damages of $5,200 to determine the total owed to him.  This amount is $20,800.

## IV.   Conclusion

The Court, therefore, will grant Plaintiff's Motion for Default Judgment and enter judgment against Defendants Joseph Estep and EHS for the sum of $20,800, for which each is jointly and severally liable.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 29, 2022