UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BENJAMIN DAVID ROMERO TIRADO,**<br><br>Plaintiff,<br><br>v.<br><br>**EXPRESS HOME SOLUTIONS L.L.C.,** *et al.*,<br><br>Defendants. | Civil Action No. 21-3152 (JEB) |

## MEMORANDUM OPINION

After certain home-remodeling companies failed to pay Plaintiff Benjamin Tirado for some of his work and related overtime pay, he sued them and their owners under the federal Fair Labor Standards Act and assorted state wage statutes. This Court previously entered a default judgment against two other Defendants in this case, Express Home Solutions LLC (EHS) and Joseph Estep, in the amount of $24,800. Plaintiff now moves for a default judgment against the remaining Defendants — Defined Construction Group LLC (DCG), Steven Fenwick, and Sanovia Smith — for the same amount. The Court will grant the Motion.

**I.     Background**

Plaintiff sued to recover damages for unpaid wages under the FLSA and the District of Columbia Wage Payment and Collection Law (DCWPCL). In his Complaint, Tirado additionally sought relief under the District of Columbia Minimum Wage Revision Act (DCMWRA), the Maryland Wage and Hour Law (MWHL), and the Maryland Wage Payment and Collection Law (MWPCL). See ECF No. 29 (Am. Compl.) at 1–2. Following the Court's

1

analysis in its prior default-judgment Opinion, see ECF No. 35 (DJ Mem. Op.) at 4, Plaintiff now seeks default judgment under only the FLSA and DCWPCL. See ECF No. 49-1 (Mot. for DJ) at 1.

Tirado filed this action on December 1, 2021, and timely served Smith, Estep, EHS, and DCG. See ECF Nos. 4, 6–7, 16 (Affs. of Process Server). After these Defendants failed to answer or otherwise respond, the Clerk entered default on March 11, 2022, pursuant to Federal Rule of Civil Procedure 55(a). See ECF Nos. 11–13, 19 (Clerk's Entries of Default).

In June 2022, however, Smith and DCG successfully moved to vacate the default against them. See ECF No. 24 (Mot. to Vacate); Minute Order of June 6, 2022. On July 12, 2022, Plaintiff amended his Complaint to include Fenwick as a Defendant, see Am. Compl. at 1, and eventually effected service on him. See ECF No. 42 (Aff. of Process Server). The Court next granted default judgment on July 29, 2022, against both Estep and EHS, ultimately finding them jointly and severally liable for $24,800 in damages. See ECF No. 34 (DJ Order); ECF No. 38 (Am. J.).

Smith and DCG, meanwhile, failed to appear at two court hearings and to respond to any discovery request. See Minute Order of Oct. 7, 2022. Additionally, Fenwick never responded to the summons served upon him. See ECF No. 43 (Fenwick Aff. for Default). The Clerk thus entered default against Fenwick on December 22, 2022, pursuant to Federal Rule of Civil Procedure 55(a). See ECF No. 46 (Clerk's Entry of Default). This Court later ordered the Clerk to enter default against Smith and DCG on January 4, 2023. See ECF No. 47 (Order of Default).

Plaintiff now asks the Court to enter a default judgment in the same sum of $24,800 against Smith, DCG, and Fenwick in unpaid overtime wages and liquidated damages. See Mot. for DJ.

## II. Legal Standard

Obtaining a "[d]efault judgment is a two-step procedure." Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 102 (D.D.C. 2015) (citing Lanny J. Davis & Assocs., LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013)). "First, the plaintiff [must] request[] that the Clerk of the Court enter default against a party who has 'failed to plead or otherwise defend'" the action. Id. at 102–03 (quoting Fed. R. Civ. P. 55(a)). An entry of "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Id. at 103. Second, the plaintiff must then move the Court for a default judgment. See Fed. R. Civ. P. 55(b).

The determination of whether a default judgment is appropriate is "committed to the sound discretion of the trial court." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) (citations omitted). A default judgment may be entered where a defendant is "totally unresponsive" and her default is plainly willful, as reflected by her failure to respond to the summons and complaint, the entry of default, or the motion for default judgment. Hanley-Wood LLC v. Hanley Wood LLC, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez, 2000 WL 331721, at *2 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)).

To ensure that there is an adequate basis to determine damages, "a plaintiff must prove [his] entitlement to the relief requested using detailed affidavits or documentary evidence on

3

which the court may rely." Ventura, 134 F. Supp. 3d at 103 (internal quotation marks omitted); see Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014).

**III.    Analysis**

The Court first looks at whether Defendants Smith, DCG, and Fenwick's unresponsiveness warrants a default judgment.  Answering that question in the affirmative, it next considers whether the claims brought under the FLSA and DCWPCL are appropriately brought against these Defendants and, if so, what the proper amount of damages is.  As the underlying damages are identical to those previously set forth in the Court's Opinion granting default judgment against Estep and EHS, this Opinion last adopts the damages analysis outlined there.

    A.  Default Judgment

The Court initially concludes that Defendants' default here is willful and deliberate, as they have been "totally unresponsive." Hanley-Wood LLC, 783 F. Supp. 2d at 150.  After successfully vacating the initial default against them, Smith and DCG failed to further defend this action by missing two court hearings, refusing to engage in discovery, and never responding to this Motion.  Fenwick never acted on the summons timely provided to him.  "Given 'the absence of any request to set aside the default or . . . the defendant[s' proving] that [they have] a meritorious defense,' it is clear that the standard for default judgment has been satisfied." Id. at 150 (quoting Gutierrez, 2000 WL 331721, at *1).

    B.  Proper Defendants

Only "employers" are proper defendants under the FLSA and DCWPCL.  An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency."  29 U.S.C. § 203(d); see also Thompson v. Linda & A.,

Inc., 779 F. Supp. 2d 139, 146 (D.D.C 2011) ("[D]eterminations of employer . . . status under the FLSA apply equally under the District of Columbia wage laws."). To determine if a person or entity is an employer under the FLSA, the Court looks to whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Ayala v. Tito Contractors, Inc., 82 F. Supp. 3d 279, 288 (D.D.C. 2015).

Considering these factors, each Defendant — Smith, DCG, and Fenwick — qualifies. Smith, as the owner of DCG, had the authority to hire, fire, and discipline Tirado. See ECF No. 49-2, Exh. A (Benjamin Tirado Decl.), ¶ 6. She would regularly inspect his job site and instruct him if the project needed adjustments. Id., ¶¶ 12, 13. Smith also monitored project expenses to guarantee profitability. Id., ¶ 14. Fenwick, too, could hire, fire, or discipline Tirado as he was the foreman for both DCG and EHS. Id., ¶ 7. Fenwick controlled Tirado's work schedule, telling him when and where he needed to arrive for the job. Id., ¶¶ 9, 10. Fenwick further set Plaintiff's pay rate and the method of payment, including providing him no premium for overtime hours. Smith, meanwhile, would regularly issue the checks on behalf of both EHS and DCG. Id., ¶¶ 9, 10, 19.

As to DCG, it (along with EHS) also operated as Tirado's employer. Under the FLSA, "an employee may be employed by more than one employer." Harris v. Med. Transp. Mgmt., Inc., 300 F. Supp. 3d 234, 240 (D.D.C. 2018). Determining joint-employer status is "essentially a fact issue" that looks at the "'economic reality' of the employment arrangement." Id. at 240, 243 (quoting Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 10–11 (D.C. Cir. 2001)). Here, Tirado was paid both by DCG and EHS throughout his employment. See Tirado Decl., ¶ 18; ECF No. 49-3, Exh. C (Checks) (noting both DCG and EHS checks used for payment).

These two companies controlled and managed the project together.  See Tirado Decl., ¶¶ 3, 9, 11, 16.  Both DCG and EHS shared the same foreman to supervise and direct Tirado.  Id., ¶¶ 9–11.  The companies, therefore, often acted as one entity during the duration of Plaintiff's employment regarding his supervision and pay.  "[I]f the facts establish that the employee is employed jointly by two or more employers, . . . all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions" of the FLSA and DCWPCL.  See Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 34 (D.D.C. 2010).  All Defendants are thus jointly and severally liable for Plaintiff's damages.

    C.  Wages

Tirado has previously proven the amount of damages he requested, see DJ Mem. Op. at 5–7, and he attaches the exact same documentary evidence to his latest Motion.  Once again, he has established that he was (1) underpaid for working overtime; (2) never paid for two weeks worked; and (3) issued checks that were rejected by the bank.  See Tirado Decl., ¶¶ 23, 26, 29.  Plaintiff has met his burden by providing a detailed declaration, as well as copies of checks and documentation of checks being returned.  See Tirado Decl.; Checks (including a check written for $1,200, $100 less than required for overtime); ECF No. 49-4, Exh. C (Returned Checks); see also DJ Mem. Op. at 5–7.  In sum, the Court finds that Plaintiff should recover $6,200 in unpaid wages.

    D.  Liquidated Damages

In addition to this sum, Tirado again seeks a multiplier for liquidated damages.  As discussed in its prior Opinion, the Court will assess damages under the DCWPCL.  See DJ Mem. Op. at 8 (quoting Herrera v. Mitch O'Hara LLC, 257 F. Supp. 3d 37, 44 (D.D.C. 2017)).  Pursuant to that statute, a delinquent employer may be liable to an employee for the payment of

"[l]iquidated damages equal to treble the amount of unpaid wages" in addition to the back wages. See D.C. Code § 32-1308(a)(1)(A). The Court thus multiples Plaintiff's actual damages of $6,200 by three to determine liquidated damages, which yields a total of $18,600. The Court then adds the cost of the lost wages to the liquidated damages to arrive at the total amount that Plaintiff is owed: $24,800.

### IV.     Conclusion

The Court, therefore, will grant Plaintiff's Motion for Default Judgment and will impose on Defendants Sanovia Smith, DCG, and Steven Fenwick the same previous default judgment in the sum of $24,800, for which all five Defendants are jointly and severally liable. A separate Order will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 1, 2023